IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| THE CINCINNATI INSURANCE CO. | : | CIVIL ACTION |
|---|---|---|
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | |
| | : | NO. 07-2389 |
| WILLOW FINANCIAL Bank, et al. | : | |

MEMORANDUM AND ORDER

McLaughlin, J.                              September 23, 2008

This case involves a contract dispute between insurer
Cincinnati Insurance Co. ("CIC"), insured Willow Financial Bank
and Willow Financial Bank Corp., Inc. (collectively "the Bank"),
and three Pennsylvania school districts (Red Lion Area School
District, Perkiomen Valley School District and Boyertown Area
School District).  The Bank is a defendant in an underlying set
of cases brought by the three school districts in the Court of
Common Pleas of Montgomery County, Pennsylvania.  The complaints
in those cases arise from alleged mishandling of the school
districts' investments and include claims of breach of contract,
breach of fiduciary duty, and fraud.

The present dispute concerns CIC's duty to defend the
Bank in the underlying litigation pursuant to an insurance
contract ("the policy") formed by CIC and the Bank's predecessor
in interest.  Although CIC is currently providing a defense for

the Bank in the underlying litigation, it does so under a full reservation of rights to recover any defense costs advanced and denies that it has a duty to defend.  The Bank brings four counterclaims:  two counts of breach of contract (for denying coverage under two separate provisions of the insurance contract); one additional count of breach of contract for failing to go to mandatory mediation over CIC's denial of the Bank's claim for coverage of defense of an SEC subpoena and portions of the underlying school district litigation; and one count for bad faith, alleging that Cincinnati analyzed the Bank's claim under only one of the two relevant sections of the insurance policy. The Bank also alleges bad faith with regard to Cincinnati's failure to mediate the SEC claim.  The Bank seeks punitive damages, interest, attorneys' fees, and costs.

        The parties filed cross-motions for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12©: CIC requesting that the Court find it has no obligation to defend the underlying lawsuit or to indemnify the Bank for any losses it incurs in that lawsuit; and the Bank requesting that the Court rule that CIC must defend the underlying claims.  The Court will grant the Bank's motion for partial judgment on the pleadings and deny CIC's motion because it finds that the parties' contract does not disclaim the duty to defend the underlying suits as they currently exist.

I.    Facts

    A.    Allegations in the Underlying State Court Cases

          Three lawsuits are currently underway in Pennsylvania state court concerning losses that the defendant school districts sustained allegedly as a result of their purchase of certain bond anticipation notes ("BANS") issued and authenticated by the Bank. Defs.' Mot. for Partial J. on the Pleadings, Ex. A, B, C.  The school districts allege that the Bank, largely through the actions and influence of one of its directors, withheld information regarding the legality and the financial health of the school districts' investments that the Bank was obligated to provide.  Id.

          The underlying suits all allege that the Bank participated in, and allowed to occur, a scheme by which an investment advisor, Robert Bradbury, placed school funds in highly risky investments that were illegal for the schools to hold and then repeatedly deceived the schools as to the riskiness of those investments.  The BANS in which the school districts funds were invested were supposed to be backed by a government body and held temporarily while the investors awaited funds from a bond issuance.  These BANs, however, were not government-insured, were based on the speculative business prospects of a golf course, and had no foreseeable prospect of being rolled into an appropriate investment.  These investments eventually became

3

worthless, and the districts lost millions of dollars.   The districts are suing to recover the lost funds.

Bradbury allegedly acted through his company Dolphin & Bradbury ("D&B") to promote the BANS. He was also a director of the Bank at the time of the school districts' investments in the BANS. Because of Bradbury's close connection to the Bank as a director and through other business dealings, Red Lion Area School District and Perkiomen Valley School District, but not Boyertown Area School District, seek to hold the Bank liable for Bradbury's actions on a theory of vicarious liability or respondeat superior. Red Lion Compl., Def. Br., Ex. B at 71-72; Perkiomen Compl., Def. Br., Ex. C at 22-23.

In addition, the school districts allege that the Bank, in its capacity as paying agent for their investment accounts, committed several separate acts that damaged the districts.  The districts allege that the Bank concealed the BANS' deficiencies and prioritized getting its own investment repaid over getting the school districts' investment repaid.  The districts also allege that the Bank repeatedly failed in its duty to notify them that the notes were in default and that it transferred funds in a manner contrary to the terms of their trust agreement, in such a way as to hide the nature and riskiness of the notes from the school districts.  The districts allege that the Bank had a

4

conflict of interest because of its relationship with Bradbury and its taking a financial stake in the notes.

Boyertown Area School District brings four counts against the Bank: breach of trust indenture and fiduciary duty; breach of fiduciary duties; civil conspiracy; and concerted action.  Boyertown Compl., Def. Br., Ex. A at 39-44.

Red Lion Area School District brings 11 counts against the Bank: declaratory judgment that Red Lion is the registered owner of the notes; breach of trust indenture; civil conspiracy; civil conspiracy (on an alternative legal basis); breach of common law duty as trustee; tortious action in concert/aiding and abetting fraud and breach of fiduciary duty; breach of trust indenture; breach of fiduciary duties; vicarious liability and respondeat superior; unjust enrichment for the 1999 note redemption; and unjust enrichment for the 2001 note redemption. Red Lion Compl., Def. Br., Ex. B at 54-77.

Perkiomen Valley School District brings five counts against the Bank: breach of trust indenture; breach of fiduciary duties; vicarious liability and respondeat superior; civil conspiracy; and concert of action.  Perkiomen Compl. Def. Br., Ex. C at 19-27.

B.   <u>The Applicable Policy Provisions and Exclusions</u>

The policy under which the Bank is insured contains several Parts as well as a series of amending endorsements.  Of these, the Bank relies only on the First and the Fourth Coverage Parts as plausible sources of CIC's duty to defend and potentially indemnify the Bank for losses incurred in the underlying litigation.  Under both Coverage Part One and Coverage Part Four, CIC identifies enumerated exceptions to its coverage obligations and argues that any "claim" (as defined in the policy) implicating these excepted provisions imposes no duty to defend or indemnify.  A fifth Part contains provisions applicable to the policy in general.  CIC also relies on this fifth Part as a basis for its denial of coverage.

1.   <u>Coverage Part One</u>

Coverage Part One is entitled "Directors and Officers Liability and Company Coverage for Financial Institutions." Coverage Part One, Section One, entitled "Insuring Agreement," states that CIC

> will pay on behalf of the "company" all "loss" which the "company" is required to pay resulting from any "claim" first made during the "policy period", or any "extended reporting period" included in or endorsed to the policy, against the "company" for a "wrongful act".

Defs.' Mot. for Partial J. on the Pleadings, Ex. D.  Before being amended by a subsequent endorsement, Section One also stated "we

will have the right and duty to defend the 'insureds' against any such 'claim'." Id.

CIC relies in part on an endorsement entitled "Securities Action Coverage Endorsement," which states that it "modifies insurance provided under [Coverage Part One]," to support its denial of any defense obligation. The Securities Action Coverage Endorsement deletes the phrase "we will have the right and duty to defend the 'insureds' against any such 'claim'" and replaces it with a phrase limiting indemnification to loss resulting from any "securities action." Id.

CIC also relies on a separate modification contained in the Securities Action Coverage Endorsement pertaining to Coverage Part One. The endorsement amends the definition of the word "claim." The definition, which amends Coverage Part One, Section Four, now reads:

> any proceeding initiated against any of the "insureds" before any governmental body which is legally authorized to render an enforceable judgment or order for money damages or other relief, including any appeal from such proceeding; or any "securities action".

Id.[1] CIC also relies on the fact that the Securities Action Coverage Endorsement amends Section Five of Part One by adding this provision: "It shall be the duty of the 'insureds' and not

---

[1] This amendment simply adds to the prior definition of the word "claim" found in the original Coverage Part One, Section Four by adding the phrase "or any 'securities action.'" Defs.' Mot. for Partial J. on the Pleadings, Ex. D.

our duty to defend 'claims', provided that the 'insureds' shall

only retain counsel as mutually agreed upon with us."   Id.

      Section Two of Coverage Part One contains a list of

policy exclusions on which CIC relies to exclude the underlying

litigation from coverage.   The policy states

> we are not liable to pay, indemnify or defend any
> "claim":...Based upon, arising out of, directly or
> indirectly resulting from or in consequence of, or in
> any way involving any "wrongful act" in the discharge
> of the duties of the "directors and officers" as a
> director, officer, trustee, employee or member of any
> entity other than the "company", even if directed or
> requested to serve such other entity by the "company".

Id.[2]  "Wrongful Act" is defined in Part One, Section Four as

> any actual or alleged error, misstatement, misleading
> statement, act, omission, neglect or breach of duty
> committed, attempted or allegedly committed or
> attempted on or after the Retroactive Date, if any, set
> forth in the Part [One] Declarations and prior to the
> end of the "policy period" by:
>
>     1.  Any of the "directors and officers" in the
> discharge of their duties solely in their capacity as a
> director or officer of the "company"; or...
>
>     3.  The "company" in the performance of
> "professional services".

---

[2] The exclusion contains two exceptions which are not applicable in this case.

Case 2:07-cv-02389-MAM   Document 50   Filed 09/23/08   Page 9 of 22


<u>Id.</u>[3]  An endorsement to the policy entitled "Modified Definition of Professional Services Endorsement" defines "professional services" as

> the activities allowed under the law and regulations governing financial institutions which are performed for or on behalf of any client or customer of the "company", but shall not include any "trust services" as defined under Coverage Part [Four].

<u>Id.</u>

### 2.   Coverage Part Four

The Bank further relies on Coverage Part Four of the policy, entitled "Trust Department Errors and Omissions Coverage for Financial Institutions," as a basis for coverage associated with the school districts' allegations pertaining to administration of their trust funds.  Coverage Part Four, Section One states that CIC

> will pay on behalf of the "insureds" all "loss" which they shall be legally obligated to pay resulting from any "claim" first made during the "policy period", or any "extended reporting period" included in or endorsed to the policy, for a "wrongful act".  We will have the right and duty to defend the "insureds" against such "claim".

<u>Id.</u>

---

[3] The Securities Action Coverage Endorsement also amends the definition of "Wrongful Act" by adding a fourth sub-section which further incorporates any of the above "wrongful acts" committed by "the 'company' solely as respects a 'securities action.'"  Defs.' Mot. for Partial J. on the Pleadings, Ex. D.

Coverage Part Four then lays out a list of thirteen exclusions to its coverage, the second of which CIC relies on as an applicable exception to its duty of defense and indemnification.  The second exception is found in Coverage Part Four, Section Two, sub-section two and states that CIC is

> not liable to pay, indemnify or defend any "claim" based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving actual or alleged...[c]onflict of interest or bad faith acts by any of the "insureds" or by any person for whose actions the "insureds" are legally responsible.

Id.  "Insureds" in the context of Coverage Part Four means either the company or the directors, officers or employees.  Id.  As in Coverage Part One, "claim" is defined broadly in Coverage Part Four, Section Four, subsection A to include any proceeding initiated against any of the insureds.  Id.

### 3.   Part Five

Part Five of the policy provides general provisions applicable to all Coverage Parts.  CIC relies in part on Part Five, Section One, subsection F because it lists another relevant exclusion from coverage.  CIC disclaims coverage of any

> "claim"...based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any "wrongful act" committed, attempted or allegedly committed or attempted prior to the "policy period" of the applicable Coverage Part if...any of the "policy insureds" knew or should have reasonably foreseen that such "wrongful act" might be the basis of a "claim".

10

Id.  "Policy insureds" refers to all natural persons and entities covered in each of the earlier Coverage Parts, but excludes past and present partnerships, joint ventures or limited liability companies unless they are shown as an insured entity in the applicable Coverage Part.  Id.

## II.  Analysis

The Court must determine whether the insurance policy provided by CIC to the Bank imposes a duty to defend against the underlying allegations brought by the school districts in state court.  D'Auria v. Zurich Ins. Co., 507 A.2d 857, 859 (Pa. Super. 1986) ("[I]f the plaintiff's complaint against the insured alleged facts which would have supported a recovery covered by the policy, it [is] the duty of the defendant to undertake the defence [sic], until it could confine the claim to a recovery that the policy did not cover.").  The Court is also asked to determine whether any possible duty to indemnify the Bank for potential losses in those underlying cases exists.[4]

---

[4] A motion for judgment on the pleadings is governed by the same standard of review as a Rule 12(b)(6) motion to dismiss for failure to state a claim.  See Jubilee v. Horn, 975 F.Supp. 761, 763 (E.D. Pa. 1997), aff'd, 151 F.3d 1025 (3d Cir. 1998).  The Court accepts as true the factual allegations in the pleadings and all reasonable inferences that can be drawn from them. The claims in question should only be dismissed if no relief could be granted under any set of facts which could be proved.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990) (citing Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).  In this case, both parties submit the insurance policy as the factual basis for their cases.

Pennsylvania assigns the task of interpretation of insurance contracts to the Court rather than the jury.[5]  <u>Madison Const. Co. v. Harleysville Mut. Ins. Co.</u>, 735 A.2d 100, 106 (Pa. 1999).

> The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.

<u>Gene & Harvey Builders v. Pennsylvania Mfrs. Ass'n</u>, 517 A.2d 910, 913 (Pa. 1986).

The standard for determining whether a policy term is ambiguous is whether reasonably intelligent persons considering the term in the context of the entire policy would honestly differ as to its meaning.  <u>Celley v. Mut. Benefit Health & Accident Ass'n</u>, 324 A.2d 430, 434 (Pa. Super. Ct. 1974). "Contractual language is ambiguous if 'it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'" <u>Gardner v. State Farm Fire and Cas. Ins. Co.</u>, No. 07-3051, 2008 WL 2805641 at *2 (3d Cir. 2008) (citing <u>Hutchison v. Sunbeam Coal Corp.</u>, 519 A.2d 385, 390 (Pa. 1986)).  The United States Court of Appeals for the Third Circuit has stated that "[a] court should read policy provisions

---

[5] The parties agree that Pennsylvania law applies to this dispute.

to avoid ambiguities, if possible, and not torture the language to create them." St. Paul Fire & Marine Ins. Co. v. U.S. Fire Ins. Co., 655 F.2d 521, 524 (3d Cir. 1981).  Where a policy provision is ambiguous, it must be read to favor the insured over the insurer.  Gardner, 2008 WL 2805641 at *2.

A key term in this case is the policy's definition of "claim," on which CIC relies as a first basis for dismissal.  The word "claim" is defined throughout the contract as "any proceeding initiated against any of the 'insureds' before any governmental body which is legally authorized to render an enforceable judgment or order for money damages or other relief, including any appeal from such proceeding."  Pl.'s Opp'n to Defs.' Mot. for Partial J. on the Pleadings, Ex. A.

CIC argues that "claim" is defined in the contract so as to preclude a duty to defend or indemnify whenever a civil proceeding as a whole involves any allegations excluded from coverage.  The Bank believes that excluded claims work on a count-by-count basis, meaning that the inclusion of a single count based on excluded allegations will not remove CIC's duty to defend the lawsuit so long as other allegations do not fall under a policy exclusion.

The policy is ambiguous as to which reading is correct. The policy does not state whether the word "claim" and its definition refer to the form in which a "claim" is filed (that

13

is, the formality of a filing necessary to trigger coverage duties) or refer to the breadth of the coverage and exclusions, as CIC argues.  According to the narrower sense of the term, which the Bank advances, "claim" would describe the formality required of a filed complaint in order for coverage to be triggered.  A complaint brought against the Bank that was delivered to the Bank's directors in a letter by a litigant's attorney would not trigger coverage, only a "proceeding" of the kinds mentioned in the definition would suffice.  Using this definition, if a particular count in a lawsuit involved excluded allegations, that count would not be covered but other counts of the lawsuit may warrant a defense or indemnification.  Only a lawsuit consisting of nothing but excluded counts would trigger no duty to defend.  <u>Cadwalleder v. New Amsterdam Cas. Co.</u>, 152 A.2d 484, 488 (Pa. 1959).

CIC's reading differs dramatically: any excluded allegation "involved" in the proceeding would preclude coverage for all other allegations in the entire lawsuit.  This reading leaves the ability to predict whether and when coverage will apply to potential plaintiffs in underlying suits and not to the party contracting for its insurance.  An underlying lawsuit that included even a frivolous allegation of excluded wrongdoing would, according to CIC's reading, fail to trigger any duty of defense or indemnification.

14

Although the policy's language would tolerate either of these two readings, the existence of two possible interpretations demonstrates an ambiguity in the contract. Gardner, 2008 WL 2805641 at *2. In the face of ambiguity, Pennsylvania law requires the Court to read the contract so as to favor the insured over the insurer. In this case, that rule requires the Court to read "claim" in the sense found in most insurance contracts and in line with the Bank's interpretation: a "claim" is an individual count or charge against the insured party that must be filed as a "proceeding" against the insured party.

Because the school districts have lodged their complaints as civil proceedings, the counts of their lawsuits meet the definition of "claim" in the policy. Any counts "involving" allegations of wrongdoing that the policy excludes from coverage will present no duty to defend; if the lawsuit involves counts based on allegations which are covered by the policy, Pennsylvania law requires CIC to defend the suit until only counts based on excluded allegations remain.

CIC is correct that the policy provides for no duty to defend under Coverage Part One for any counts or allegations in the underlying complaint. Coverage Part One, as amended by the Securities Action Coverage Endorsement specifically excludes any duty to defend. The endorsement states that Coverage Part One is amended by deleting the phrase "[w]e will have the right and duty

15

to defend the 'insureds' against any such 'claim'" and replacing
it with the phrase "it shall be the duty of the 'insureds' and
not our duty to defend 'claims....'"  Defs.' Mot. for Partial J.
on the Pleadings, Ex. D.  The Bank argues that this modification
amends the policy only with respect to "Securities Actions." The
endorsement adds certain clauses specific to securities actions,
from which the endorsement presumably took its name, but the
relevant language of the endorsement applies to Coverage Part One
regardless of the nature of the action.  There is no ambiguity in
these amendments and the Court must give them their intended
effect.  Thus, CIC owes no duty to defend under Coverage Part
One.

     The Court must now analyze any duty to defend under
Coverage Part Four.  Initially, CIC claims that Part Five of the
policy effectively disclaims coverage of any of the counts and
allegations in each of the underlying lawsuits under both
Coverage Parts One and Four.  Part Five, Section One, subsection
F states that CIC will not indemnify or defend any claim

> based upon, arising out of, directly or indirectly
> resulting from or in consequence of, or in any way
> involving any "wrongful act" committed, attempted or
> allegedly committed or attempted prior to the "policy
> period" of the applicable Coverage Part if...any of the
> "policy insureds" knew or should have reasonably
> foreseen that such "wrongful act" might be the basis of
> a "claim".

Id.

16

Each of the underlying complaints includes allegations of wrongdoing based on events occurring after March 5, 2004. If these alleged wrongdoings are ultimately the basis for liability, then the "prior knowledge" exclusion to coverage will not apply. Those bases of liability would not have existed prior to the inception date and the "policy insureds" could not have known that they might constitute the basis of a "claim" prior to the inception date.

CIC also contests any duty to defend under Coverage Part Four on the basis of an exclusion specific to that policy part. CIC points to the "conflict of interest" exclusion in Coverage Part Four and states that each count in the underlying lawsuit involves excluded allegations of divided loyalties. In sum, the Bank needs to identify at least one count in each of the underlying lawsuits that does not necessarily involve a conflict of interest and that does not necessarily relate to wrongdoings about which the policy insureds knew or should have known about prior to March 5, 2004. The Bank succeeds in identifying such a claim in each of the underlying lawsuits.

The Boyertown Area School District Litigation involves several bases of liability that meet both criteria. Boyertown bases much of its complaint on actions taken on and after June 23, 2004:

> [A]fter it became clear to [the Bank] and others that
> there was no reasonable expectation of a sale of the

17

> Golf Course before September 1, 2004, and that the 2001
> HGA BANS would default upon maturity, Bradbury and D&B
> used [Boyertown's] funds to purchase a significant
> additional amount...of the 2001 HGA BANS.  Neither D&B,
> Bradbury, [nor the Bank] advised [Boyertown] of HGA's
> prior financial position and the high risk of investing
> in the Golf Course.

Boyertown Compl. ¶ 56, Def. Br., Ex. A at 15.  More alleged

wrongdoing and obfuscation with respect to the investments took

place throughout the latter half of 2004.  The Boyertown

Complaint, in its count titled "Breach of Trust Indenture and

Fiduciary Duties Against Defendant [Bank]" states the following

claims:

> 149. [The Bank] breached its duties under the Trust
> Indenture, causing losses to [Boyertown].
>
> 150. [The Bank] failed to act in good faith to exercise
> such rights and duties as were contained in the Trust
> Indenture, using the same degree of care and skill in
> their exercise, as a prudent person would exercise or
> use under the circumstances in the conduct of his own
> affairs.
>
> 151. [The Bank] failed, after events of default, to
> exercise such rights and duties as were contained in
> the Trust Indenture, using the same degree of care and
> skill in their exercise, as a prudent person would
> exercise or use under the circumstances in the conduct
> of his own affairs.

Boyertown Compl. ¶¶ 149-51, Def. Br., Ex. A at 39.  Each basis

for recovery could succeed based on findings of wrongdoing after

March 5, 2004 and not including any conflicts of interest.

        Red Lion Area School District makes similar allegations

regarding post-March 5, 2004 wrongdoings.  Red Lion Compl. ¶¶

124-51, Def. Br., Ex. B at 27-33.  As in the Boyertown complaint,

18

Red Lion includes several counts as bases of recovery that do not involve conflicts of interest and could be founded upon the allegations relating to actions occurring after March 5, 2004. Count Seven (Breach of Fiduciary Duty).  The counts relating to the Bank's alleged breach of the trust indenture frequently allude to basic breaches of that contract unrelated to conflicts of interest.  Count Nineteen (Breach of Common Law Duties as Trustee), includes grounds of liability that do not hinge on conflict of interest including counts based on breaches of fiduciary duties of prudence and simple breaches of contract. Red Lion Compl. ¶¶ 288(b), 290, Def. Br., Ex. B at 64-65.

Perkiomen Valley School District also alleges wrongful acts divorced from conflicts of interest and taking place after March 5, 2004.  Perkiomen Valley includes a table of suspect transactions that span several months of the second half of 2004. Perkiomen Compl. ¶ 67, Def. Br., Ex. C at 18.  Count One of the Perkiomen complaint includes several grounds of recovery that do not implicate conflicts of interest and could be based on post-March 5, 2004 activity.  Perkiomen alleges that the Bank failed, after events of default, to exercise such rights and duties as were contained in the Trust Indenture with the required degree of care and skill.  Perkiomen Compl. ¶ 74-76, Def. Br., Ex. C at 20.

Although each of the grounds for recovery surveyed here may ultimately be based on wrongdoing excluded from coverage

19

(i.e., conflicts of interest or pre-inception activity about which the policy insureds knew or should have known), at this point the underlying litigation contains potentially indemnifiable claims for which CIC has a duty to defend. Pennsylvania law requires that CIC continue to defend the Bank with respect to all claims in the underlying suit until such time as <u>only</u> excluded grounds of recovery remain.   <u>Cadwalleder v. New Amsterdam Cas. Co.</u>, 152 A.2d 484, 488 (Pa. 1959).

The Bank's motion for partial judgment on the pleadings is accordingly granted with respect to the Bank's second counterclaim, which requested that the Court find a duty to defend pursuant to Coverage Part Four of the policy.   Plaintiff CIC's motion for partial judgment on the pleadings is denied with respect to the declaratory relief requested as to their duty to defend the Bank in the underlying litigation.   At this point it would be premature for the Court to issue any opinion as to CIC's duties of indemnification because that duty will depend on the grounds of relief, if any, on which the school districts ultimately prevail.

This case is not resolved as to the issues surrounding the duty to defend or indemnify against the SEC subpoena nor as to the Bank's counterclaim for breach of contract based on a duty to mediate denial of coverage relating to the SEC subpoena.   Nor

does today's decision resolve the Bank's counterclaim of bad
faith.

   Defendant Willow Financial Bank's motion for partial
judgment on the pleadings is GRANTED and Plaintiff CIC is found
to have an on-going duty to defend Willow Financial Bank in the
underlying school district litigation.

   An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CINCINNATI INSURANCE    :    CIVIL ACTION
CO.                         :
              Plaintiff,    :
        v.                  :
                            :    NO. 07-2389
WILLOW FINANCIAL Bank, et al. :

ORDER

AND NOW, this 23rd day of September, 2008, upon
consideration of the parties' cross-motions for judgment on the
pleadings (Docket Nos. 36, 39) and the parties' opposition and
reply briefs, and after oral argument on the motions heard on May
30, 2008, IT IS HEREBY ORDERED that defendant Willow Financial
Bank's motion is GRANTED and the plaintiff's motion is DENIED.

It is further ORDERED that the parties will convene by
telephone conference on Thursday, October 2, 2008, at 4:30 P.M.
to discuss the future deadlines for discovery and filing of
dispositive motions in the matters remaining in this case,
including issues relating to the SEC Subpoena and the defendant's
counterclaims of bad faith.  The call is to be initiated by the
plaintiff.

BY THE COURT:

Mary A. McLaughlin, J.